### 4063. MANGHAM *et al. v.* THE STATE.

1. Assignments of error not relied upon in the argument or referred to in the briefs will be treated as having been abandoned.
2. Dividends can lawfully be declared and distributed only out of the actual legitimate net earnings of the corporation; and the difference between the present value of all the corporate assets and the amount

of all losses, expenses, other charges and liabilities, including the capital stock, constitutes net earnings for the purpose of dividends. It follows that an insolvent corporation can not have net earnings out of which dividends can be lawfully declared and paid.

3. Where a corporation declares and pays a dividend not from its actual legitimate net earnings, but from cash which should be applied to the payment of current expenses, and from borrowed money, the payment of such dividend "necessarily increases its debts."

4. Where the evidence showed that the business of the corporation was largely, if not entirely, entrusted to the control and management of the accused, and that, as officers of the corporation in actual charge of its current business, they had full opportunity to acquire detailed knowledge of its financial condition, such knowledge will be presumed, and where it is also shown that they prepared and presented to the directors a statement purporting to give a true exhibit of the financial status of the corporation, and, based on this statement, they joined with the directors in the declaration and distribution of the dividend, and it subsequently appeared that this statement was in fact not a true presentation of the financial condition of the corporation, the jury was authorized to infer that the accused, with knowledge of the true financial condition of the business of the corporation, made and presented the false and fictitious statement for the purpose of deceiving the directors as to its true financial status.

5. All other propositions of law raised by the record are fully controlled by the decision of this court in *Cabaniss* v. *State*, 8 *Ga. App.* 129 (68 S. E. 849).

DECIDED AUGUST 9, 1912.

Indictment for embezzlement; from Spalding superior court—Judge Daniel. February 24, 1912.

*R. R. Arnold, Frank Flynt, C. G. Mills, W. A. Fuller, Dodd & Dodd,* for plaintiffs in error.

*J. W. Wise, solicitor-general, W. H. Beck, T. E. Patterson,* contra.

HILL, C. J.   J. J. Mangham, as treasurer and director, and J. W. Mangham, as secretary and director, were jointly indicted and convicted for a violation of § 740 of the Penal Code of 1910, which declares: "No joint-stock company, corporation, or other association shall declare any dividend, or distribute any money among its members as profits, when such dividend, or money, is not declared or distributed from the actual legitimate net earnings of its investments, and does in any manner increase its debts. Any president, director, or other officer or agent of any joint-stock company, corporation, or other association, violating the provisions of this section, shall be guilty of a misdemeanor." The accused filed a demurrer to the indictment, based on numerous grounds,

and excepted to the overruling of the demurrer, but in the argument and brief of this court their counsel do not refer to these exceptions, and we will therefore consider them as having been abandoned. It may be stated, however, that the decision of this court in *Cabaniss* v. *State,* 8 *Ga. App.* 129 (68 S. E. 849), fully controls the questions raised by the demurrer.

Before this court the learned counsel for the plaintiffs in error insist that the verdict of guilty is contrary to law and without evidence to support it. In other words, they present for determination squarely the merits of the case against the accused. The law applicable to the facts, they insist, was correctly charged by the court as follows: "The State in making out its case against these defendants must satisfy your minds beyond a reasonable doubt, first, that a dividend was declared and paid to the stockholders; second, that these defendants participated in the act of declaring and paying and distributing that dividend; third, that the declaration and payment of the dividend in question was made out of funds of the corporation other than those arising out of the net earnings of its legitimate investments; fourth, that the declaration and payment of the dividend increased in some way the debts of the corporation;" fifth, that unless the defendants knew that this dividend was declared and distributed from funds of the corporation other than actual net earnings, there could be no conviction. We thoroughly agree with the statement of learned counsel that these instructions correctly stated the provisions of law involved and the burden upon the State. It is conceded that a dividend was declared by the directors of the corporation as charged in the indictment, and that there is positive evidence of the fact that the accused participated in the declaration and payment and distribution of this dividend. But it is insisted that the State has failed to establish at least three of the essential elements of the offense: (1) that the State failed to prove that the company did not earn any profits for the year ending May 28, 1910, out of which the dividend was declared and paid; (2) that the State did not prove that the debts of the company were increased by the declaration and payment of dividends, or that the payment of the dividend in question bore any relation to the debts of the company; and (3) that the evidence fails to show knowledge on the part of either of the defendants that the dividend in question was not declared and

paid and distributed in fact from the net earnings of the invest-
ments of the corporation. In the able and exhaustive argument
and briefs presented to us relating to these propositions, it is justly
contended that if either one of the three propositions is not proved,
the conviction of the accused is contrary to law. We will take up
the propositions in their order and discuss them in the light of the
evidence.

Does the evidence show that the corporation declared and dis-
tributed dividends for the year ending May 28, 1910, from the
actual legitimate net earnings of its investments? If it did, the
law was not violated; if it did not, the statute was violated, and
all of the directors and officers who participated in the declaration
and distribution of the dividends were guilty of a misdemeanor.
Under the express terms of the statute, no joint-stock company,
corporation, or other association can lawfully declare any dividend
or distribute any money among its members as profits when such
dividend or money is not declared or distributed from *"the actual
legitimate net earnings of its investments."* This prohibition of
the statute is but the declaration of the general rule that dividends
can be declared and paid only out of the profits or surplus earnings
of the company. What is meant by the term "net earnings?" This
term is simply a synonym for the profits of the business, and,
popularly speaking, the net receipts of a business are its profits,
and the surplus over and above the capital stock and debts con-
stitutes profits. We give several clear and comprehensive defini-
tions of "profits." As defined by the New Jersey Chancery Court,
"'net profits' mean what shall remain as the clear gains of any
business venture, after deducting the capital invested in the busi-
ness, the expenses incurred in its conduct, and the losses sustained
in its prosecution." Park *v.* Grant Locomotive Works, 40 N. J.
Eq. 114 (3 Atl. 162). "The surplus over and above the capital
and debts constitutes profits." Barry *v.* Merchants Exchange, 1
Sandf. Ch. (N. Y.) 280, 307. And the Supreme Court of the
United States said that the term "profits," out of which dividends
alone can be declared, denotes what remains after defraying every
expense, including loans falling due, as well as interest on such
loans. Eyester *v.* Centennial Board, 94 U. S. 500 (24 L. ed. 188).
Comprehensively speaking, the net earnings are the amount of
earnings left after deducting the indebtedness of the company

from its gross earnings; and it therefore follows that there can be no actual, legitimate net earnings as long as the outstanding indebtedness of the company is greater than its income. In other words, a valid dividend can only be declared out of the surplus after paying all liabilities. The purpose of this law is twofold: first, to preserve the assets or property of the corporation for its creditors; and, secondly, to prevent the obtaining of money, to be invested in the stock of the corporation, by false declarations of profitable business.

The learned trial judge in the present case instructed the jury that "a corporation which is insolvent may, from its actual legitimate earnings on its investment for a particular and definite period, pay a dividend, and an insolvent corporation may, for a particular period, have legitimate earnings." This view of the law was very favorable to the accused. We do not think it is sound. We think that dividends may be paid from the surplus accumulated from the profits of previous years, although there may have been no actual profits during the year in which such dividends are declared and paid; but we think it absolutely a condition precedent to the declaration and distribution of dividends that there must be a surplus previously accumulated or made during the current year; for it is not possible for an insolvent corporation to lawfully declare and distribute a dividend, for the very simple reason that it can not have any surplus or net earnings as long as it is unable to pay its indebtedness. 5 Thomp. Corp. § 5311. As dividends can only be declared and paid out of profits, it is clear that they can not be declared unless there are profits; and even if there are profits, still they can not be declared and paid where the corporation is clearly insolvent. 5 Thomp. Corp. § 5383. See also *Orr* v. *State,* 8 *Ga. App.* 129 (68 S. E. 849), where it is held by this court that no declaration of a dividend is lawful in a condition of insolvency or impairment of capital stock; for any profits that may be made must first be applied to the payment of the debts of the corporation and to the restoration of the capital stock.

We now make a brief application of these general principles, which are well settled, to the evidence in the present case. The dividend declared May 31, 1910, which it is alleged in the indictment was an unlawful dividend, was declared by the board of

directors upon faith in the correctness of a financial statement which was prepared principally by J. J. Mangham and partly by J. W. Mangham, and presented to the board of directors as a true exhibit of the financial status of the corporation. The expert accountant testified that this statement was not a true presentation of the financial condition of the corporation, but that, on the contrary, it was made up of many false entries taken from the books, such as juggling with the cash accounts, false representations as to the actual amount of cash on hand, many worthless accounts which had been carried for years as live assets, failing to charge up expenses, increasing and diminishing the cash at will by fictitious entries, and many other fraudulent manipulations of the books for the purpose of showing a fictitious net earning; that as a matter of fact, at the time this financial statement was submitted to the directors, instead of there being a profit, there was a loss of money and a condition of insolvency; that instead of there being a profit of $97,000, there was a loss of over $7,000, making a difference of over $104,000, even without deducting doubtful accounts, and that in less than ten months thereafter an audit of the affairs of the company showed it to be insolvent to the amount of $111,332, and the capital stock had been impaired or reduced from $150,000 to $38,000. The bookkeeper of the corporation testified that at this very time when the corporation claimed to have made net earnings, it was borrowing money to meet its pay-rolls and maturing obligations, and for the purpose of paying these dividends. The jury had a right to believe the testimony of this expert and the bookkeeper. The fact that the mill failed so soon afterwards by such a large amount, without there being any unusual financial depression affecting mill industries, clearly indicated that the financial statement was not a truthful presentation of the financial status of the corporation when the dividends were declared and distributed. It is insisted by counsel for plaintiffs in error that there was sufficient cash on hand to pay these dividends. This fact is not at all significant of a condition of solvency, and it is not by any means proof of the existence of profits or net earnings. Even an insolvent corporation can frequently have cash on hand without net earnings, but whatever cash is on hand should be applied to the payment of its debts or the restoration of its capital, and not distributed as dividends to stockholders.

It is said, in the next place, that there was no evidence showing that the debts of the company had been increased by the declaration of the dividends in question, and that under the statute this fact is an essential element of the offense. The language of the statute is, "does in any manner increase its debt." Does the declaration and payment of the dividend in any manner increase the debts of the corporation? We think learned counsel give to this language a too restricted meaning. We think it necessarily follows that an unlawful appropriation of the assets of an insolvent corporation for the payment of dividends necessarily increases its debts, in that it takes away from its creditors the assets which lawfully belong to them and gives them to the stockholders. The declaration of a dividend itself increases the debt of a corporation, for when the dividend has been declared, it becomes a debt due the stockholders by the corporation. In other words, to the extent of the dividend the stockholders become creditors. This would probably not be the case unless the dividend was lawfully declared; but in any event it is an appropriation of the money of the corporation otherwise than to the payment of its debts, and to this extent constitutes a diminution of its assets and a consequent increase of its liabilities. The testimony of the bookkeeper is that at this very time, instead of using the cash on hand to meet its pay-rolls and its maturing obligations, the company actually borrowed money to pay these debts. Certainly the appropriation of the cash to pay these dividends made it necessary to borrow this money, and this certainly was increasing in some manner the debts of the corporation.

It is next insisted that the State failed to show knowledge on the part of either of the defendants that the dividends were not paid from the net earnings of the investments of the company. The evidence clearly shows that if any one connected with the company knew of its financial condition, it was J. J. Mangham. The entire management of the business of the corporation, it seems, was entrusted to him, and had been entrusted to him for years. All the contracts of the corporation were made by him, all the collections of money for the output of the mills were made by him. He bought all the cotton for the mill. He contracted all the debts for the mill. He prepared the annual statements from which the directors declared dividends. The bookkeeper testified,

that J. J. Mangham kept the inventory book of the mill; that while he (the bookkeeper) kept the books of the company, they were made up from data furnished to him by J. J. Mangham, and that J. J. Mangham himself made up the financial statements presented to the directors. "I got every item that I put on the books from Mr. Mangham. He gave me the information from which I made the trial balances. They were made from the books, and he gave me the information that went into the books." If the books, therefore, were improperly manipulated, if they contained false entries, according to the testimony of the bookkeeper Mr. Mangham was responsible for them. It is inconceivable that an officer who had entire charge of the business of the corporation for its entire life, and who made up the annual financial statements for the directors, could have been ignorant of its real financial condition. The very fact that he furnished untrue data to be put on the books shows that he did have knowledge of such condition and was endeavoring to hide the true condition of affairs from the stockholders and creditors. Unquestionably, the opportunity and ability to know the facts was, as correctly stated by the trial judge, equivalent to a knowledge of the facts. The only evidence especially relating to the knowledge of J. W. Mangham was the statement of the bookkeeper that he assisted J. J. Mangham in the preparation of the financial statements made to the directors. But we think the law charges directors and officers with the duty of knowing the financial condition of the corporation entrusted to their management. We do not think that an officer or director can participate in an unlawful declaration and distribution of dividends, the unlawful appropriation of money which belongs to the creditors of the corporation, the improper use of the assets of the corporation, and, when called upon to account for such unlawful conduct, protect himself by the statement that he was ignorant of the affairs of the corporation. If present, participating in the declaration of the dividends, the law presumes that he did so with knowledge of the affairs of the corporation, and holds him to a strict accountability for his official act. The burden is on him to show that although he did participate in the unlawful distribution of the property of the corporation, he did so without any knowledge of its financial condition. In the present case both of the accused, in their statements to the jury, insisted that they had

protested against the declaration of the dividend in question; that while in their opinion there were sufficient net earnings from which to declare a dividend, yet, in their judgment, the profits earned should have been used for the benefit of the corporation, in the protection of its business and the improvement of its plant, and should not have been distributed among the stockholders; and the court told the jury that if they believed this statement to be the truth, the defendants would not be guilty. But some of the directors testified that they were present and that neither one of the accused made any objection to the declaration of the dividend, but both of them voted for it. This was a matter for the jury. After giving the record a most careful investigation, and considering the very fair and most favorable charge of the trial judge, we have been unable to find any reason why another trial should be had. *Judgment affirmed. Russell, J., absent because of illness.*