## UNITED STATES v. RIELY et al.
### No. 5744.

Circuit Court of Appeals, Fourth Circuit.

Aug. 17, 1948.

Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Robert N. Anderson, Sp. Asst. to Atty. Gen., and George R. Humrickhouse, U. S. Atty., of Richmond, Va., on the brief), for appellant.

Eugene Untermyer, of Washington, D. C. (Christian, Barton, Parker & Boyd, of Richmond, Va., on the brief), for appellees.

Before DOBIE, Circuit Judge, and WEBB and WATKINS, District Judges.

DOBIE, Circuit Judge.

This case was tried without a jury before the District Court. There was no dispute about the facts, which were stipulated.

Pierce Oil Corporation (hereinafter referred to as taxpayer) was a corporation organized on June 21, 1913, under the laws of the State of Virginia. By decree of the Circuit Court of the City of Richmond, Virginia, entered December 27, 1940, it was dissolved.

In April, 1940, Henry C. Riely and Robert T. Barton, Jr., were appointed receivers of the taxpayer by order of the Circuit Court of the City of Richmond under the provisions of Section 3813 of the Virginia Code. The receivers were authorized to collect all outstanding accounts and to institute and prosecute within the Commonwealth of Virginia all such actions, proceedings or suits as in their judgment might be necessary for the recovery or proper protection of the taxpayer's property. On May 4, 1945, Henry C. Riely resigned as one of the receivers of the taxpayer, and Robert T. Barton, Jr., by decree of the court was continued as sole receiver of the taxpayer.

In March, 1938, the taxpayer filed its federal income tax return for the taxable year 1937 and paid, under protest, the undistributed profits tax shown to be due thereon in the total amount of $17,714.55.

For a number of years preceding the taxable year 1937, the taxpayer's operations had been unsuccessful. It had sustained a deficit in accumulated earnings and profits up to and including December 31, 1936, (the close of its preceding taxable year) and as of January 1, 1937, (the beginning of its 1937 taxable year) of at least $1,149,642.76.

The taxpayer had net earnings and profits for the year 1937 of $86,412.46, no part of which were distributed during the year 1937; but at the close of the taxable year 1936 and during its entire taxable year 1937 it had a deficit in accumulated earnings and profits, and the taxpayer's capital was impaired on December 31, 1936, by at least $1,149,642.76, and on December 31, 1937, by at least $1,000,000.

On or before January 13, 1943, the receivers filed with the Collector of Internal Revenue a claim for refund of $17,714.55 paid as undistributed profits tax for 1937. The Commissioner of Internal Revenue has never taken any action in respect to the claim. More than six months having passed since the filing of the claim, this suit was filed in the United States District Court for the Eastern District of Virginia, to recover the amount set forth in the claim for refund. Judgment was entered for the taxpayer and the United States has appealed to us.

The Federal Revenue Act of 1936, c. 690, section 26(c) (3), as amended by section 501(a) (2) of the Revenue Act of 1942, c. 619, provides a credit for deficit corporations "if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earning and profits * * *."

Section 3840 of the Virginia Code provides that the directors of a corporation shall "have power to declare and pay dividends upon the shares of its capital stock *out of net earnings, or out of its net assets in excess of its capital as hereinafter defined.*" (Italics ours.) This is immediately followed by a definition of the word "capital", as the sum of the consideration received by a corporation in payment for its shares of stock, or such amounts as from time to time may be transferred to capital, less such amounts as may be transferred from capital by reduction thereof.

The only question, then, that we are called upon to decide is whether or not, by this Virginia Statute, the taxpayer-corporation was prohibited from paying dividends from its net earnings of $86,412.46 for the year 1937, when these earnings were far from sufficient to restore its capital deficit. No Virginia case has been found interpreting or applying the instant provision of the Virginia Statute. The District Judge interpreted the Statute as prohibiting the declaration of dividends for the year 1937 and granted the refund sought by the taxpayer. In this, we think, he erred.

At the outset, it should be noted that no question of corporate insolvency is here involved and that corporate creditors play no part in the problem. When corporate creditors are fully satisfied, the funds of a dissolved corporation are distributed among the stockholders. Accordingly, whether or not a dividend is declared, or the funds are held for distribution, these funds, in either event, go to the stockholders.

If a pure analytical approach be employed, clearly there was here no prohibition of the declaration of dividends. The Statute is couched, not in the terms of a negative prohibition, but rather in the terms of positive authorization. Directors of a corporation are empowered to declare and pay dividends "out of net earnings, or out of its net assets in excess of its capital." Manifestly, net earnings (on the one hand) and excess of assets over capital (on the other hand) are utterly and absolutely distinct and separate. Either may exist, or not exist, as to a specified period, with, or without, the other.

The words "net earnings" are followed by a comma; then, before the words "out of its net assets in excess of its capital" comes the disjunctive conjunction "or". As the English language is rationally used, this would seem to imply two separate sources of dividends ((1) net earnings; and (2) excess of assets over capital), each with no relation to, no connection with, the other. To arrive at the interpretation reached by the District Judge, it is necessary to insert in the Statute, right after the words "net earnings" some such non-existent negative proviso as "provided there is an excess of corporate assets over capital." If such were the real intention of the statutory draftsman, he must plead guilty to the charge of hideously inept draftsmanship.

Net earnings are defined in Webster's New International Dictionary as "Excess of earnings over expenses, sometimes including interest charges, *during a given period.*" (Italics ours.) In Ballentine's Law Dictionary we find: "The net earnings of a business have been defined as the gross receipts less the expenses of operating the business to earn such receipts." States Black's Law Dictionary (followed by a long citation of supporting cases): "Net earnings are the excess of the gross earnings over the expenditures defrayed in pro-

ducing them, and aside from and exclusive of capital laid out in constructing or equipping the works or plant." In none of these definitions is any mention made of excess of assets over capital as an inseparable concomitant of, or even as having any relation to, net earnings.

In Union Pacific Railroad Co. v. United States, 99 U.S. 402, 420, 25 L.Ed. 274, Mr. Justice Bradley stated:

"As a general proposition, net earnings are the excess of the gross earnings over the expenditures defrayed in producing them, aside from, and exclusive of, the expenditures of capital laid out in constructing and equipping the works themselves."

Again, in the same opinion, 99 U.S. at page 426, 25 L.Ed. 274, he said:

"Each year is to stand by itself. If there is a deficit in any year instead of net earnings, such deficit cannot be carried over into the next year's accounts by the company."

And, in Mobile & Ohio Railroad Co. v. Tennessee, 153 U.S. 486, 497, 14 S.Ct. 968, 972, 38 L.Ed. 793, Mr. Justice Jackson used these words: "The 'net earnings' of corporations, out of which profits are distributable in dividends, are thus defined in St. John v. Erie Railway Co., Fed.Cas. No. 12,-226, 10 Blatchf. 279: ' "Net earnings" are properly the gross receipts, less the expenses of operating the road to earn such receipts.' " In New York, Lake Erie & Western Railroad v. Nickals, 119 U.S. 296, 308, 7 S.Ct. 209, 215, 30 L.Ed. 363, Mr. Justice Harlan remarked that stockholders "were only entitled to dividends out of the *net earnings* of the principal road, and its adjuncts *accruing in the current year."* (Italics ours.) Cf. Drewry-Hughes Co. v. Throckmorton, 120 Va. 859, 92 S.E. 818; O'Shields v. Iron Foundry, 93 S.C. 393, 76 S.E. 1098; Iowa Southern Utilities Co. v. Cassill, 8 Cir., 69 F.2d 703.

Counsel for the appellant tell us:

"In addition to interpretations made by the courts, financial statements of corporations, corporate treatises and other authorities clearly show that the term 'net earnings' is ordinarily used to refer to the earnings of a particular period such as a year rather than to earnings accumulated from corporate organization."

And, in support of this contention, they cite Stevens, Handbook on the Law of Private Corporations (1936, 391–393); Ballantine and Hills, Corporate Capital and Restrictions upon Dividends under Modern Corporation Laws, 23 California L.Rev. 229, 241 (1935); Guthmann, Analysis of Financial Statements (1942), 199; Kilduff, Auditing and Accounting Handbook (1924), 146; Weiner, Theory of Anglo-American Dividend Law; American Statutes and Cases, XXIX Col.L.Rev. 461, 474–475 (1929). See, also, note 55 A.L.R. 8.

Counsel for appellees insist that general concepts of corporation law preclude payment of dividends from current earnings in the face of a capital impairment, failing explicit statutory provision therefor. And we are cited to 29 Col.L.R. 906, 909; 11 Fletcher, Cyclopedia of Corporations, p. 838. Of course, whatever conclusion we reach as to the usual corporate practice *in the absence of statute* is not conclusive here; for we are dealing with the meaning of the express words used in the specific Virginia Statute.

Let us suppose, however, that (absent any statute) a corporation starts with a capital of $100,000. After several difficult years, the corporate assets are reduced to $90,000. There are no creditors and there is ample cash to carry on the corporate business. Now comes a good year in which the corporation's net earnings are $5,000. We believe that if the directors in their sound discretion so determine, there is no compelling reason in corporate finance or economic practice, which would prevent the directors from declaring a $5,000 dividend for the stockholders. Surely this would not constitute a very unusual performance. For the rule in England, see 55 A.L.R. 20.

Counsel for taxpayer have cited, and lay great stress upon, a number of decided cases. Emphasis is put upon Senior Investment Co. v. Commissioner, 2 T.C. 124, which unquestionably favors the taxpayer's contentions. We do not approve the reasoning of the Tax Court's opinion in that case, and the wording of the Michigan Statute, Comp.Laws Supp.1940, § 10135-22 (which the Court was interpreting) differed from that of the Virginia Statute before us.

In International Ticket Scale Corporation v. United States, 2 Cir., 165 F.2d 358, Circuit Judge Clark was dealing with the statutes of Delaware and New York, which were quite different from the Virginia Statute; for the Delaware Statute, Rev.Code 1935, § 2066, expressly permitted dividends from net earnings where there was a capital deficit, while the New York statute, Stock Corporation Law, § 114, Consol.Laws c. 59, imposed liability on the officers, directors and stockholders for such a practice.

In Mengel Co. v. Glenn, D.C., 50 F.Supp. 765, 769, affirmed 6 Cir., 145 F.2d 235 in a per curiam opinion, District Judge Miller was dealing with a New Jersey Statute, N.J. S.A. 14:8—19, and he stressed the difference between the term "net profits" (used in the Statute) and "net income for any particular year." District Judge Smith, in Lich v. United States Rubber Co., D.C., 39 F.Supp. 675, was also dealing with the New Jersey Statute and the term "net profits;" and he was careful to point out (39 F.Supp. at page 681): "Where the capital is impaired, *annual net earnings,* if insufficient to offset the impairment, *do not constitute net profits.* * * * The term *net profits is not synonymous* with the term *annual net earnings.*" (Italics ours.) While, in Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed 247, the gist of Mr. Justice Sanford's opinion is clearly indicated, 275 U.S. at page 218, 48 S.Ct. at page 72, 72 L.Ed. 247, where he says: "But it is a prerequisite to the existence of 'undivided profits' as well as a 'surplus,' that the net assets of the corporation exceed the capital stock." Surely neither "undivided profits" nor "surplus" is synonymous with the term "net earnings" used in the Virginia Statute.

Finally, in this connection we discuss briefly the case of Mangham v. State, 11 Ga.App. 440, 75 S.E. 508. Much of the language used by Chief Judge Hill in his opinion does favor taxpayer's contentions. The language, again, of the Georgia Statute was quite different from the Virginia Statute. The Georgia Statute was framed as a prohibition, not as a grant; there was *no disjunctive* in the Georgia Statute which forbade the declaration of dividends except *solely* "from the actual legitimate net earn-

ings of its investments." Pen.Code Ga. 1910, § 740. Chief Judge Hill treated "net earnings" as entirely synonymous with "net profits", a doctrine with which we by no means agree. And, in that case, the dark issue of insolvency raised its ugly head.

We think the Virginia Statute did not forbid the taxpayer from paying dividends during the year in question. The taxpayer, accordingly, is not entitled to a refund of the taxes paid under protest. The judgment of the District Court is reversed.

Reversed.