### TAYLOR et al. v. CUMMINGS et al.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1903.)

No. 956.

**1. CORPORATIONS—STOCKHOLDERS—STOCK LIABILITY—STATUTES.**

Hurd's Rev. St. 1893, c. 32, §§ 8, 25, declaring that stockholders of a corporation shall be liable to creditors for the amount unpaid on the stock held by them when not "fully paid," did not create a new obligation, but is merely declaratory of the common law.

**2. SAME — EXCHANGE OF PROPERTY FOR STOCK — OVERVALUATION—FRAUD—INTENT.**

Where the members of a firm organized a corporation to continue the firm's business, and exercised entire good faith in adopting the valuation of assets fixed by the bookkeeper and financial manager of the firm without any intent to overvalue, the fact that by reason of errors in the bookkeeper's statements there was a material overvaluation did not render the stockholders receiving their stock for their interest in the firm as "full paid" liable to creditors for the difference between the actual value of the property and the nominal value of the stock.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellants, judgment creditors of James H. Walker Company, an insolvent Illinois corporation, filed their bill to enforce an alleged liability of the stockholders of the corporation for unpaid subscriptions to the capital stock, and this appeal is from a decree overruling exceptions to the master's report and dismissing the bill for want of equity. The several opinions of Judge Jenkins (who heard the case below) on demurrers to the bill and amended bill, and on final hearing are reported as Taylor et al. v. Walker (C. C.) 117 Fed. 737, and the issues presented by the bill and conclusion of facts and law on which the decree of dismissal rests, are clearly set forth. While the testimony is voluminous, no conflict appears upon the material facts, and error is variously assigned for inferences of fact found or not found by the master and conclusions of law therefrom, confirmed by the decree.

The issue is whether the corporate stock was full paid within the doctrine applicable in favor of creditors, upon the following state of facts:

The corporation was organized December 17, 1892, by the members of the firm of James H. Walker & Co., to take the assets and become the successor of that firm in its business of wholesaling and retailing dry goods at Chicago. That business was extensive and had been carried on for a series of years, in charge of Mr. Walker, who was the general partner, with Mr. Cummings and Mr. Howard as special partners. The special partners had contributed about $900,000 of the firm capital, but took no part in the management, and pursuant to statute were free from personal liability for debts beyond the capital so invested. While Mr. Walker was a dry goods merchant of long experience and practical manager of the business, the books and financial af-

---

¶ 1. Stockholders' liability to creditors in equity, see note to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.

fairs were managed by an employé, Mr. Magoon, who made periodical statements for the information of the members, and all relied thereon for their understanding of the firm affairs. The change to a corporate arrangement was advised by leading creditors of the firm as the preferable plan for all interests, and was finally adopted by the members in that view; no dissatisfaction with the business or ulterior motive for the change on the part of either appearing from the evidence. The master further finds that the valuation of the firm assets, including good will, was ascertained from statements and estimates furnished by Mr. Magoon—based on the inventory of July, 1892, without awaiting the inventory to be made in January—and the members all relied upon and accepted such showing in entire good faith, which fixed the value at $1,500,000 for the transfer; that the capital stock of the corporation and the pro rata subscriptions were made to equal such valuation in like good faith, and the transaction was carried out accordingly; that Mr. Magoon in making such estimate erroneously included several large items and overvalued others, so that the aggregate thus adopted considerably exceeded the actual value of the assets; but the members of the firm and corporation were without knowledge or suspicion of such excess. The commercial disasters of 1893 speedily followed the commencement of business by the corporation, and in August, 1893, it was forced into liquidation and a receiver appointed. The assets proved insufficient to satisfy the corporate indebtedness, so that this bill was filed to charge the stockholders with the deficiency, through overvaluation of the firm assets so transferred to make up their subscriptions to the capital stock. To what extent the ultimate shrinkage in values was due to these subsequent conditions does not appear, but the errors and overvaluations so found by the master are of sufficient amount to raise the questions pressed for review.

Arthur B. Wells, Newton A. Partridge, Adolph Moses, and John M. Blakeley, for appellants.

John S. Miller, S. A. Lynde, and John C. Howard, for appellees.

Before GROSSCUP and BAKER, Circuit Judges, and SEAMAN, District Judge.

PER CURIAM. The honest purpose of the members of the special partnership in organizing the corporation to take the place and assets of the firm and carry on the business in their interest, and their entire good faith in adopting the valuation of assets and fixing the amount of capital stock accordingly, are well established facts in the record. The circumstances of the transaction are free from indication of intention or motive to make the capital stock in excess of the fair value of the assets and trade which were to be retained in substantially the same ownership, and no attempt appears to escape membership or liability or to speculate in the stock. The suggestions in the brief of counsel for appellants of ulterior motive for the change are not consistent with the undisputed testimony.

With the facts thus settled the only question for review is whether the trial court erred in the rule of law upheld by the decree. The doctrine of Coit v. Gold Amalgamating Co., 119 U. S. 343, 345, 7 Sup. Ct. 231, 30 L. Ed. 420, was rightly applied, and is controlling, unless that rule is either modified by later decisions of the Supreme Court, or supplanted by the statutes of Illinois under which the incorporation was effected. Coit v. Gold Amalgamating Co. clearly pronounces the general doctrine applicable to such state of facts, and the same view is approved or recognized without modification in the subsequent decisions. Fort Madison Bank v. Alden, 129 U. S. 372, 378, 9 Sup. Ct. 332, 32 L. Ed. 725; Fogg v. Blair, 139 U. S. 118, 126;

11 Sup. Ct. 476, 35 L. Ed. 104; Handley v. Stutz, 139 U. S. 432, 11 Sup. Ct. 530, 35 L. Ed. 227; Camden v. Stuart, 144 U. S. 104, 113, 12 Sup. Ct. 585, 36 L. Ed. 363; 11 Rose, Notes (U. S.) 229. It is contended that the case of Camden v. Stuart, supra, charges stockholders with liability under facts analogous to those appearing in this controversy, and that the ruling therein and expressions in the opinion modify the earlier decisions and are opposed to this decree. We have carefully examined the case in that view, but find neither analogy in the facts nor departure in the opinion from the rule of the Coit Case. In Camden v. Stuart the facts of intentional overvaluation and of simulated payment for the issue of stock were obvious, so that the doctrine there stated that the trust arising in favor of creditors through the subscriptions for the stock "cannot be defeated by simulated payment of such subscriptions, nor by any device short of actual payment in good faith," was clearly relevant. Neither of these features appears in the case at bar to bring it within that elementary doctrine.

The main contention for reversal, however, rests upon the Illinois statute and decisions which are alleged to establish an independent ground or measure of liability against the stockholder for deficiency in the payment for stock. As this corporation was created under the laws of Illinois, it is unquestionable that the stockholders are subject to any liability thereby imposed, in addition to their common-law liability. But the statutory provisions cited to that end are sections 8 and 25 of chapter 32 of Hurd's Revised Statutes of 1893, and the only liability therein mentioned is for the amount unpaid upon the stock when not "fully paid," thus imposing no new obligation and simply providing "for the preservation of an old one," as it existed at common law. Patterson v. Lynde, 106 U. S. 519, 521, 1 Sup. Ct. 432, 27 L. Ed. 265; Handley v. Stutz, 139 U. S. 417, 427, 11 Sup. Ct. 530, 35 L. Ed. 227. Nevertheless the contentions are earnestly pressed (1) that decisions of the Supreme Court of the state defining such liability are controlling, and (2) that stockholders are thereby made chargeable for overvaluation of property applied by them in payment for the stock, regardless of the fact of good or bad faith in the transaction. The latter proposition is thus broadly stated in the brief of the learned counsel for the appellants: "If the difference between the amount of stock and the value of the property with which the subscription is attempted to be satisfied, is apparent, then we insist a case is made out, under the authorities."

In the case of a liability created by statute alone the construction thereof adopted by the state Supreme Court would prevail in the federal court. But the mere statutory affirmance of a well-recognized common-law liability presents another question, fortunately not arising in the present instance in view of our conclusion as to the import of the state decisions cited.

For the rule of liability urged on behalf of the appellants as above stated, the recent case of Sprague v. National Bank of America, 172 Ill. 149, 58 N. E. 19, 42 L. R. A. 606, 64 Am. St. Rep. 17, is the chief reliance. We have examined this case with the utmost care, and find no countenance for the appellants' contention, either upon the facts reported or in the opinion, and no substantial conflict with the doctrine

of the federal decisions. While the fact of overvaluation of assets appears there, as in the present case, the other material circumstances are in no sense analogous. It was the case of a California corporation, with a large overissue of stock, reorganized by the stockholders as an Illinois corporation, share for share, for the purpose of escaping personal liability imposed upon them by the California statute. As stated in the opinion, the aggregate value of the property was treated by the corporators as "wholly unimportant, and did not enter into their consideration"; and the transaction is there characterized as "a corporate burial in California for resurrection in Illinois." The validity of an agreement between the corporation and shareholders upon the value of property transferred in payment for stock is distinctly affirmed, "provided the agreement is made in good faith, and in the exercise of judgment fairly and honestly directed." The utmost effect of this decision is that property can be received in payment for stock on the basis only of its actual value as honestly agreed upon between the parties, and that the right of a creditor to impeach the transaction as not so predicated "is not dependent, in any degree, upon the knowledge possessed by the creditor that the subscription was or was not paid in full. If unpaid to the corporation, it must be paid to the creditor." In other words, the test is of a payment in fact by a transfer of property at a bona fide valuation, and not whether the value so agreed upon proved to be excessive. So in Coleman v. Howe, 154 Ill. 458, 469, 39 N. E. 727, 45 Am. St. Rep. 133 (also cited on behalf of the appellants), the rule is thus stated:

"Cases may arise, where stock is issued for property taken at an overvaluation, which would justify courts in compelling stockholders to respond to the creditors for the par value of the stock less the actual value of the property taken in exchange for it. Such will not be the case where there is entire good faith in making the valuation."

We find no support in the decisions of the Illinois Supreme Court for the proposition on which reversal is sought, and the ruling of the Circuit Court is in conformity with the established doctrine.

The decree therefore is affirmed.