[No. 12152.  Department One.  January 7, 1915.]

NORTHERN BANK & TRUST COMPANY, *Appellant*, v. W. P. DAY *et al.*, *Respondents.*[1]

CORPORATIONS—STOCK—STOCK DIVIDENDS—LEGALITY.  Stock dividends, by increasing the capital stock of a corporation and issuing the increase to its stockholders, are lawful, where the same are in good faith and the company's assets exceed its debts and the amount of the capital stock, including the increase so distributed.

SAME—LEGALITY OF STOCK DIVIDENDS—EVIDENCE OF GOOD FAITH—SUFFICIENCY.  Such stock dividends are not shown to be in bad faith, by reason of the failure of the company a year and a half later, where the company at the time was doing a good business, and was in good condition, there was need of increasing the capital stock, persons acquainted with its affairs and business invested in the stock, and there was nothing to indicate that the stockholders were not honest in the belief that the undivided profits exceeded the par value of that portion of the increase which was distributed as a stock dividend.

Appeal from a judgment of the superior court for King county, Smith, J., entered December 12, 1913, in favor of the defendants, in an action to recover unpaid stock subscriptions. Affirmed.

*Shorett, McLaren & Shorett*, for appellant.

*Ballinger, Battle, Hulbert & Shorts, Granger & Clarke*, and *Lund & Lund* (*R. G. Denney*, of counsel), for respondents.

MORRIS, J.—The appellant, as trustee in bankruptcy, seeks in this action to recover from the respondents, as stockholders of an insolvent corporation, an amount claimed to be due the corporation upon subscriptions to its capital stock.  The pertinent facts are about these: In March, 1910, the stockholders of the Standard Fish Company adopted a resolution increasing its capital stock from $25,000 to $60,000, the par value of both the old and new issues of stock being ten dol-

[1]Reported in 145 Pac. 182.

lars per share. At a subsequent meeting of the trustees, it was provided that fifteen hundred shares of the increased stock should be divided between the stockholders according to their holdings January 1, 1910, and that such increase of stock should be issued in lieu of dividends. Under this arrangement, certificates of capital stock were issued to the respondents, dividing the fifteen hundred shares between them in various amounts ranging from 21 to 463 shares. It is this $15,000, representing the par value of this stock, that appellant seeks to recover, contending that respondents have not paid for the stock in money or property of any value.

We have held, following the uniform rule, that dividends can be declared and paid only out of profits or surplus net earnings, and that a corporation could not reduce its capital stock by paying any portion of it to its stockholders. *Jorguson v. Apex Gold Mines Co.*, 74 Wash. 243, 133 Pac. 465, 46 L. R. A. (N. S.) 637. This rule is to be read in the light of the facts there presented. If the circumstances here were of the same nature as those reviewed in the cited case and others upon which it is based, the same rule would necessarily be announced. But we have another rule that, where stockholders act honestly and in good faith in placing a value upon the assets of the corporation for the purpose of paying subscriptions to capital stock or in declaring dividends, no creditor can successfully complain of such act unless he can show fraud of some character. The court will look to the *bona fides* of such a transaction and, if it is clear that it was carried out in good faith in all its particulars, and in the exercise of a judgment fairly and honestly directed, it will be sustained. *Coit v. Gold Amalgamating Co.*, 119 U. S. 343; *Taylor v. Cummings*, 127 Fed. 108; *Taylor v. Walker*, 117 Fed. 737.

A like pronouncement has been made by us in *Lantz v. Moeller*, 76 Wash. 429, 136 Pac. 687, in holding that, if the assets of a corporation exceed its debts and the amount of the capital stock, the excess can be applied by the stockholders in pay-

ment of subscriptions to an increase of capital stock. It is not an infrequent thing for a corporation to make a stock dividend by increasing its capital stock and issuing the same to its stockholders, and so long as the corporation is possessed of property exceeding its liabilities in an amount equal to its capital stock, including such increase, it will be permitted to do so. *Lantz v. Moeller, supra;* 2 Clarke & Marshall, Private Corporations, p. 1603; 1 Cook, Corporations, § 287.

The purpose of the stockholders in increasing the capital stock was plainly to enable the company to provide cold storage facilities. The books of the company, as represented to the stockholders by the treasurer, showed the company to be in good financial condition, with undivided profits exceeding the par value of the 15,000 shares of stock. We can find nothing to indicate that the respondents were not honest in such a belief at the time, or that it appeared other than in good faith to them and as proper in a business sense to divide this profit among themselves before taking in additional stockholders.

Illustrating the good faith of the transaction is testimony to the effect that, subsequent to the issuance of the new stock, the company refused to sell stock to certain offering parties, giving as their reasons therefor that the company was a small one and only those who were familiar with the fish business and could be of some assistance to the company were wanted in the company. Another fact that looms large in showing good faith is that the captain of the fishing boat, referred to as the Woodbury, invested $1,000 in this stock. This fact is significant in view of the attack made upon the value of the Woodbury and the act of the company in increasing its value from $15,000 to $20,000. This man knew the boat and its condition. It does not look reasonable that he would have paid $1,000 for stock based upon its excessive valuation. The Woodbury was purchased for $22,500 when the company was first organized. It was a small concern, and the organizers figured that a capitalization of $25,000 would be suffi-

cient, and that, in addition to the Woodbury, $10,000 would be required. The value of the Woodbury was accordingly fixed at $15,000, irrespective of the amount expended in its purchase. When it was desired to increase the capital stock, they increased the value of the Woodbury to $20,000, and held it at this valuation in determining the net surplus to be divided among the stockholders in payment of the issuance of the increased capital stock. There was no need in March, 1910, for this corporation to act other than in good faith. It was apparently in a good financial condition, doing a good though small business. At that time there were no creditors seeking in any way to molest the company. It was not until September, 1911, that it was adjudicated an insolvent. This unfortunate ending in no wise reflects upon the good faith of the transaction in March, 1910. The stockholders were then dealing with themselves as they considered to be for the best interests of the company. No question of creditors loomed upon their horizon. There was no necessity for bad faith, for there was nothing to conceal and no one to deceive. The record admits of no other conclusion than that respondents acted fairly and honestly in making this stock dividend, and that they were honest in the belief that it was justified by reason of the company's possession of property equal in value to the capital stock so increased and above all liabilities.

The judgment is affirmed.

CROW, C. J., CHADWICK, GOSE, and PARKER, JJ., concur.