R. L. BLAFFER & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81007, 87762.   Promulgated May 17, 1938.

*Walter E. Barton, Esq.*, and *J. L. Block, C. P. A.*, for the petitioner. *DeWitt M. Evans, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The principal question is whether, in the fiscal years ended September 30, 1932, 1933, and 1934, the petitioner was "formed or availed of for the purpose of preventing the imposition of the surtax upon its stockholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed" and thus subject to the 50 percent tax provided in section 104, Revenue Act of 1932. The Commissioner determined that it was, and the taxpayer in contesting the determination has undertaken to prove that it was not.

In its brief, petitioner says (p. 26):

It may be admitted that the petitioner is a holding or investment company and that the prima facie presumption raised by section 104 (b)[1] applies.

---

[1] SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

\* \* \* \* \* \* \*

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

This admission is supported by Blaffer's testimony that he had petitioner do nothing but invest in and sell stocks, that it was a trading company, and that the only way he expected it to make money was through trading. Consideration of the issue must therefore start with the postulate that the corporation was formed or availed of for the condemned purpose, and must continue with the inquiry whether the evidence proves affirmatively that it was not. Drastic as the tax may be, the statute clearly expresses the legislative intent to apply it to a mere holding or investment corporation unless the corporation succeeds in establishing its purpose to be wholly other than that of preventing surtax upon its shareholders—not only that there was another purpose, but that there was a complete absence of the disapproved purpose. Obviously a holding or investment corporation may be formed or availed of for several purposes, but it can not escape this tax unless it proves that it had no purpose to enable the escape of surtax. It is to this complete lack of the condemned purpose that its evidence must be directed, and if it does not fairly prove an absence of such purpose it must fail, regardless of what other purposes it may prove. This is, in our opinion, the effect of subdivision (b), and the evidence must be examined in its entirety to determine whether it disproves the statutory presumption and the Commissioner's determination.

The organization and existence of the corporation and the transfer to it by the Blaffers of dividend paying stocks had the effect of relieving them of the surtaxes which would have been attributable to such dividends had they continued to come to the Blaffers as owners of the stocks. The statute, however, does not operate merely because of such actual effect; it operates if such effect was the purpose. *Cecil B. deMille*, 31 B. T. A. 1161, 1174; affd., 90 Fed. (2d) 12; certiorari denied, 302 U. S. 713; *C. H. Spitzner & Son, Inc.*, 37 B. T. A. 511. In the absence of the condemned purpose, the effect alone is no foundation for the tax. This is not to say that the effect is of no significance, for it may, and perhaps often does, indicate the probability of a purpose to induce it. In ordinary life it is not unreasonable to infer that the effect of a voluntary act is among the purposes of the actor. So long as the inference be not arbitrary and evidence to the contrary be entertained and fairly weighed, it may be regarded as reasonable. And in determining the purpose, the actor's categorical statement may be of less weight than the facts and circumstances which affect it. To be skeptical of the weight to be accorded an interested witness' statement in view of other evidence is not the same as wholly to reject the statement as if it were dishonest.

The petitioner was wholly owned by Blaffer and his wife. It was organized when they were actively trading in the stock market and

after they had accumulated a fortune of over thirteen million dollars, represented by securities of many corporations in many states. It is said that the reasons for its formation grew out of the survey made by Barton and Block in 1927. It was to facilitate the administration of Blaffer's estate at death, because the transfer of various securities was a cumbersome process. Yet only a small portion of the securities was transferred to the corporation, and those retained were still various and spread over six states. Such a purpose is not inconsistent with a further purpose to effect a saving in surtaxes. Barton and Block advised that such a corporation must make distributions to avoid this very tax. Thus Blaffer was fully advised of the use to which such a corporation could be put, and he frankly admits that he knew that a failure of the corporation to distribute would invite the tax.

But he says that in the tax years he could not properly permit the corporation to distribute because it was insolvent. This is the principal point upon which petitioner's argument is based. The insolvency is predicated not on petitioner's books, for they showed a steadily increasing earned surplus; they showed gross receipts each year in excess of outlay and a resulting annual net, and an annually expanding net worth. The insolvency is predicated on the comparison each year after the market collapse of the market value of its assets, consisting wholly of securities, and the amount of its liabilities, consisting wholly of its brokerage accounts guaranteed by himself. This argument of insolvency would circumvent the clear intendment of the statute. The Board has already held that when considering a holding or investment company the diminution in market value of its securities may not be offset against income derived through gains and profits, interest, and dividends, so as to establish that the corporation was not availed of to save the shareholders from surtax. *Rands, Inc.*, 34 B. T. A. 1094 (on review C. C. A., 6th Cir.); *Nipoch Corporation*, 36 B. T. A. 662 (on review C. C. A., 2d Cir.). As to a business corporation actually engaged in commercial operations, the effect of market values upon its surplus has been recognized as more substantial and the argument more engaging, *C. H. Spitzner & Son, Inc., supra.* In the present case the point has little force when the alleged insolvency is analyzed with regard for its substance. Blaffer and his wife were the sole shareholders. The brokers were the sole creditors (except for $7,000 owed to Blaffer in 1932 and 1933), and these creditors held the securities and Blaffer's personal guaranty. No one else was to the slightest extent interested in the affairs of the corporation. Insolvency was a mathematical abstraction, for the creditors were fully secured by Blaffer's individual guaranty and Blaffer had ample assets to assure

it. Even article 1347 of the Texas Civil Statutes,[2] which petitioner cites, would go no farther than to make the directors jointly and severally liable for the corporation's debts, to the extent of the dividend; and such liability Blaffer had already assumed by his guaranty. To say, under these circumstances, that the large trading profits, dividends, and interest are not indicative of the purpose which underlies the tax is to give mere words and doctrine a force greater than the truth which lies behind them. Ordinarily, for purposes of income tax, the rise and fall in value of retained assets is not a factor for consideration,[3] and if the market value of petitioner's securities had risen, the rise would not have had significance either in measuring its income or discovering the applicability of section 104. In Blaffer's own hands the dividends, interest, and gains from trading would have been taxable, irrespective of the fall in the market value of securities he did not sell, and hence the purpose to enable him to escape surtax is not disproved by evidence of market value of securities held by his corporate instrument. *Rands, Inc., supra; Nipoch Corporation, supra; A. D. Saenger, Inc.,* 33 B. T. A. 135; and *R. & L. Inc.,* 33 B. T. A. 857, are illustrations of the extent to which the argument would operate to frustrate the statutory intent. It may not be forgotten that by section 104 (d) it was open to the shareholders to treat their distributive shares of the corporation's income as constructively received by them and within their taxable income even though it was deemed wiser for any reason that there should be no actual distribution.

The petitioner argues that since the Blaffers transferred to it only a comparatively small portion of their securities, it may not be believed that their purpose or that of the corporation was to save surtax, for the retention of the larger portion is inconsistent with such a purpose. There is no explanation to be found in the evidence for the retention. It does not, however, overcome the prima facie purpose attaching to the corporation within the sphere and to the extent of its operations. The statute operates upon the corporation and the tax is measured by its income. The fact that the creators and shareholders limited its operations and withheld a majority of

---

[2] If the directors of any corporation shall knowingly declare and pay any dividend when the corporation is insolvent, or any dividend the payment of which would render it insolvent, they shall be jointly and severally liable for all the debts of the corporation then existing, and for all debts of the corporation which thereafter, during the time such directors respectively remain in office, shall be contracted. The amount for which they shall be so liable shall not exceed the amount of such dividend. If any director is absent at the time of declaring the dividend, or shall object thereto at the time such dividend is declared, and shall file his objections in writing with the secretary or other officer of the corporation having charge of the books, he shall be exempt from said liability.

[3] Law of Federal Income Tax, Paul and Mertens, vol. 1, § 5.10, p. 112; cf. § 26.54, vol. 3, p. 290.

their assets still leaves the inquiry open as to the application of the statute to the corporation such as it was.

Neither the desire of Blaffer to provide an occupation for his minor son then in college nor to facilitate the administration of his estate after death is inconsistent with a purpose to escape surtaxes, *Rands, Inc., supra.*

It is said that the condemned purpose is disproved by the evidence that the Blaffers not only transferred stocks yielding taxable dividends, but also rid themselves of liabilities carrying deductible interest, the relinquished deductions being greater than the gross income of the dividends. For example, it appears that for the fiscal year 1930, the interest paid by the corporation was $109,856.59, while the dividends received amounted to $64,332.32, having the effect, it is said, of depriving the shareholders of a substantial factor of tax reduction. This comparison is regarded as a demonstration that there was no purpose to effect a saving of surtaxes. Again the argument falls short of the mark. The failure of the corporation to distribute to its shareholders is not considered solely with regard for the income which it may derive through corporate dividends, but with regard for its gains and profits from all sources. The corporation had trading profits of $100,227.85, which was $51,241.76 greater than its trading losses, and each year the profits exceeded the losses. This performance was the very expectation of Blaffer when he formed the corporation and transferred both the securities and the interest bearing liabilities. He said that he expected it to make money through trading. The purpose to renounce an advantageous interest deduction thus loses force, especially since in each year the net result to the corporation was a taxable net income the distribution of which would have imposed surtax upon its shareholders.

The arguments of petitioner to overcome the prima facie effect of the Commissioner's determination have been considered separately and found inadequate. But it should not be thought that the decision is based alone on a piecemeal examination of the logical effect of each circumstance disclosed by the evidence. Dealing with a holding or investment corporation, the inquiry is a broad one of substance; that is, whether all the evidence taken together leads reasonably to the conclusion that the corporation was not within the description of the statute. Congress has said that holding and investment corporations are vulnerable. The considerations applicable to them are not like those applicable to a manufacturing or merchandising corporation. Arguments which might be moving as to the latter, because of the nature and exigencies of its business, will have no substance when made by a holding or investment company of a single individual.

The 50 percent tax was properly applied.

In determining the deficiency, the Commissioner excluded from petitioner's gross income gains from sales to Blaffer of $19,687.87 in 1933 and $16,075 in 1934, which petitioner had included in its returns. This exclusion by the Commissioner was because he thought it consistent with a contemporaneous disallowance by him of deductions taken by Blaffer for losses in sales by him to the corporation. In separate proceedings the Board has held such losses deductible since recognition of the transactions may not be denied. There is no dispute about the facts. The amounts should be restored to petitioner's income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

———

HILL, dissenting: The majority opinion is predicated upon the findings of fact that "petitioner was a mere holding or investment company", and that "it was formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed." It is said that petitioner has the burden of proving a complete lack of the condemned purpose, and if it does not do so it must fail, regardless of what other purposes it may prove. The evidence submitted is, in my opinion, amply sufficient to meet the test thus laid down.

That petitioner was not "a mere holding or investment company" is clearly established by the record. A "mere" holding or investment company is obviously one whose sole function is to hold property or make investments. Petitioner may not fairly be placed in such category. It was also a business or trading corporation, actively engaged during the taxable years in carrying on business operations for profit. During the year 1932 petitioner derived net profit from trading in securities in the amount of $55,280.99. Its total net profit for the year was $35,020.85. Thus, except for the profit realized from its business operations it would have had no income for that year subject to tax under section 104, but would have had a substantial loss representing interest paid and other expenses. For the year 1933 petitioner's total net profits amounted to $23,740.71, which included $21,853.55 net gain from trading operations. For the year 1934 petitioner derived total net profits of $49,796.98, including net gain from trading in the amount of $31,059.40. So far as taxable income is concerned, these facts, it seems to me, indicate that during the years before us petitioner's function as a holding or investment company was negligible and only incidental to its business operations,

rather than exclusive. The admission of its counsel that petitioner is a holding or investment company, and that the prima facie presumption raised by section 104 (b) applies, to which reference is made in the majority opinion, appears to be a legal conclusion without support in the record. However, if it may be said that such presumption ever attached, it is sufficiently rebutted by the evidence.

The next question arising for consideration is whether petitioner was formed, or availed of in the taxable years, for the purpose of enabling its shareholders to escape surtax through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. As suggested by respondent in his brief, it may well be that one of the primary purposes of organizing the petitioner corporation was to permit its shareholders to realize large losses deductible from their individual incomes through sales by them to it of securities which had depreciated greatly in value below their original cost bases. But such a purpose, if it existed, is not within the ambit of section 104, and we are not here concerned with that phase of the case.

The record contains no evidence which fairly indicates, in my opinion, that petitioner was either formed or availed of for the prohibited purpose, but on the other hand discloses affirmative and uncontradicted proof to the contrary. Blaffer testified in effect that he was advised by both his attorney and accountant that it would be necessary for the corporation to declare dividends whenever earnings were available, or subject itself to the penalty tax of section 104, and that in forming the corporation he had no purpose whatever of attempting to escape surtax through accumulation of the company's gains and profits. He further testified at length as to the motives which actuated him in organizing the corporation. A purpose to escape surtax through accumulation of gains and profits was wholly absent. The purposes as stated by Blaffer were both reasonable and sufficient to explain and justify his actions. We may not, therefore, disregard his testimony merely because he is an interested party; particularly so, when such testimony is supported by all the surrounding facts and circumstances. *C. H. Spitzner & Son, Inc.*, 37 B. T. A. 511.

However, if it were true that petitioner was originally formed for the purpose stated in the statute, or as the majority opinion holds, the evidence is insufficient to overcome the prima facie presumption of the statute and respondent's determination, still petitioner would not be subject to the penalty tax of section 104, because it had no accumulation of gains and profits in the taxable years which could lawfully be divided or distributed. For the same reason it can not be said that it was "availed of" for the prohibited purpose.

This brings us to the principal and most important question presented in this case, namely, whether a corporation whose capital has been lost or substantially impaired through depreciation in value of its capital assets to the extent of rendering it insolvent can accumulate gains and profits distributable as dividends prior to restoration of such impairment, and, if not, whether an insolvent corporation in such circumstances is nevertheless subject to the tax imposed by section 104.

At the close of the fiscal year 1932 petitioner owned assets of the fair market value of $801,841.38, and its total liabilities, other than capital, amounted to $1,761,598.73. Its current liabilities then exceeded the fair market value of its assets in the amount of $959,-757.35. It operated largely on money borrowed from brokers, and in 1932 of its total indebtedness it owed brokers the sum of $1,687,-563.48. On the same basis, petitioner's current liabilities exceeded its assets in 1933 and 1934 by the amounts of $491,640.94 and $123,618.35, respectively. All the stocks and bonds owned by petitioner, which constituted its principal assets, were hypothecated with brokers as collateral security for loans, in addition to which petitioner's accounts with the brokers were personally guaranteed by its stockholders.

Clearly petitioner was insolvent throughout all the taxable years. It was insolvent in 1932, 1933, and 1934 to the extent of $959,757.35, $491,640.94, and $123,618.35, respectively, on the basis of current liabilities alone, in addition to capital stock liability. The impairment of its capital stock for each of those years was far in excess of the respective amounts above set forth. The value of its assets in each of the taxable years was insufficient to pay even the indebtedness owing to the brokers, and obviously it could not have continued to operate except by reason of the guaranteeing of its accounts by its stockholders. In these circumstances petitioner could not lawfully have declared and paid a dividend out of current earnings.

A corporation can not declare and pay a dividend when it is insolvent or when the payment thereof would render it insolvent. *Mangham* v. *State*, 11 Ga. App. 440; 75 S. E. 508; *Fricks* v. *Angemeier*, 53 Ind. App. 140; 101 N. E. 329; *Montgomery* v. *Whitehead*, 40 Colo. 320; 90 Pac. 509. A corporation must maintain its capital stock at its *original value* before any dividends may be lawfully paid. *Crawford* v. *Roney*, 130 Ga. 515; 61 So. 117; *Coleman* v. *Booth*, 268 Mo. 64; 186 S. W. 1021; *Whittaker* v. *Amwell National Bank*, 52 N. J. Eq. 400; 29 Atl. 203; *Equitable Life Assurance Society* v. *Union Pacific Railroad Co.*, 212 N. Y. 360; 106 N. E. 92; *Hutchinson* v. *Curtiss*, 92 N. Y. S. 70; *Cornell* v. *Seddinger*, 237 Pa. 389; 85 Atl. 446.

With the exception of dividends in liquidation, a corporation can declare and pay dividends only out of net profits, or when such pay-

ment does not impair its capital stock. *Mobile & Ohio Railroad Co.* v. *Tennessee*, 153 U. S. 486; *Main* v. *Mills*, 6 Bliss. 98; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; 77 N. E. 13; *Berryman* v. *Bankers Life Insurance Co.*, 102 N. Y. S. 695.

Whether a corporation is solvent and has surplus or net profits out of which a dividend may be paid must be determined on the basis of the *then actual cash* or *fair market value* of its assets. *Whittaker* v. *Amwell National Bank, supra; American Steel & Wire Co.* v. *Eddy*, 138 Mich. 403; 101 N. W. 578; *Siegman* v. *Electric Vehicle Co.*, 140 Fed. 117; *Mobile & Ohio Railroad Co.* v. *Tennessee, supra; Cannon* v. *Wiscassett Mills Co.*, 195 N. C. 119; 141 S. E. 344. In the case last cited, the court said:

Manifestly, for the purpose of determining the amount to be declared and paid as a dividend, it is necessary that the *true value of the assets, in cash,* and not the mere book value, should be ascertained, for no dividend can be lawfully declared and paid except from the surplus or net profits of the business. * * * The terms "net profits" or "surplus profits" have been defined as what remains after deducting from the *present value* of the assets of a corporation the amount of all the liabilities including the capital stock. [Italics supplied.]

In *Mobile & Ohio Railroad Co.* v. *Tennessee, supra,* the Supreme Court defined "surplus" or "net profits" of a corporation as the difference between the total *present value* of its assets, after deducting losses and liabilities, and the amount of its capital stock. See also *Crawford* v. *Roney, supra; Coleman* v. *Booth, supra; Hyams* v. *Old Dominion Copper Min. etc. Co.*, 82 N. J. Eq. 507; 89 Atl. 37; affd., 83 N. J. Eq. 705; 92 Atl. 588; *Roberts* v. *Roberts-Wicks Co., supra; Northern Bank etc. Co.* v. *Day*, 83 Wash. 296; 145 Pac. 182.

In *Mangham* v. *State, supra,* the Court of Appeals of Georgia held that the difference between the *present value* of all the corporate assets and the amount of all losses, expenses, other charges, and liabilities, including the capital stock, constitutes net earnings for the purpose of dividends, and in its opinion further stated:

* * * it is not possible for an insolvent corporation to lawfully declare and distribute a dividend, for the very simple reason that it can not have any surplus or net earnings as long as it is unable to pay its indebtedness. 5 Thompson on Corporations, § 5311. As dividends can only be declared and paid out of profits, it is clear that they can not be declared unless there are profits; and even if there are profits, still they can not be declared and paid where the corporation is clearly insolvent. 5 Thompson on Corporations, § 5383. See also *Cabaniss* v. *State*, 8 Ga. App. 129, 68 S. E. 849, where it is held by this court that no declaration of a dividend is lawful in a condition of insolvency or impairment of capital stock; for any profits that may be made must first be applied to the payment of the debts of the corporation and to the restoration of the capital stock.

In *C. H. Spitzner & Son, Inc., supra,* this Board held that, in determining whether accumulations of gains and profits are beyond the

reasonable needs of a business, it is erroneous to compute a surplus based on cost of assets which are useful to the business only to the extent of their lower market value.

If petitioner in the instant case had distributed its gains and profits in the taxable years, such distribution would not only have been unlawful and in violation of generally recognized principles of corporation law, above referred to, but would have been in direct violation of Texas law. See art. 1347, vol. 3, Vernon's Annotated Texas Statutes (Civil). In the circumstances shown, the gains and profits of the taxable years were certainly not beyond the reasonable needs of petitioner's business, and I think it can not fairly be said under the facts that petitioner was "availed of" for the purpose of preventing the imposition of tax upon its shareholders through the medium prescribed by the statute.

I think it is too plain for argument that petitioner had no accumulation of "gains and profits" in the taxable years which could be lawfully divided or distributed. Coincidental with receipt, its net profits became capital, and such process must continue until impairment of its paid-in capital has been restored. Although a distribution (except in liquidation) could not lawfully be made, is an insolvent corporation in such situation nevertheless subject to the penalty tax of section 104?

The majority opinion points out "that by section 104 (d) it was open to the shareholders to treat their distributive shares of the corporation's income as constructively received by them and within their taxable income even though it was deemed wiser for any reason that there should be no actual distribution." This view, it seems to me, places an unreasonable and strained construction upon the statute. The provision referred to has no legitimate application here. Whenever a corporation has gains and profits which may be lawfully distributed as dividends, and the stockholders prefer for any reason that no actual distribution should be made, they may under the statute include their distributive shares in their own taxable income and thus avoid the making of a distribution and also the penalty tax of section 104. But here the corporation had no gains and profits which could be lawfully distributed. Did the Congress by the cited statute intend nevertheless to compel an unlawful distribution not of gains and profits but of capital equal to the amount of current earnings, or in the absence of a distribution to impose a penalty tax of 50 percent? To justify the imputation of such a legislative intent, we must, in my opinion, find plainer and more mandatory language than is contained in any of the subdivisions of section 104.

Reference is made in the opinion of the majority to the cases of *R. & L., Inc.*, 33 B. T. A. 857; affd., *R. & L. Inc.* v. *Commissioner*, 84

Fed. (2d) 721; *A. D. Saenger, Inc.*, 33 B. T. A. 135; affd., *Saenger, Inc.* v. *Commissioner*, 84 Fed. (2d) 23; *Rands, Inc.*, 34 B. T. A. 1094; and *Nipoch Corporation*, 36 B. T. A. 662, as supporting the conclusion reached therein. In neither *Saenger, Inc.*, nor *R. & L., Inc.*, was there an impairment of capital, nor in either was it shown that if it had distributed its current gains and profits there would have been an invasion of capital. Nor was it shown in either of those cases that the accumulation of the gains and profits was necessary to meet the reasonable needs of the business. Those cases are, therefore, clearly distinguishable on the facts from the case here, where the petitioner corporation required the use of large amounts of capital to carry on its business operations.

*Rands, Inc.*, and *Nipoch Corporation, supra,* can not be distinguished on principle from the instant proceeding to the extent that they hold in effect that where a corporation's paid-in capital has been diminished in excess of its current earnings through depreciation in value of its capital assets, such corporation may nevertheless be said to have been availed of for the purpose of preventing the imposition of surtax upon its shareholders through accumulation of its gains and profits, if not distributed as dividends. Such holding, I think, is erroneous, and, therefore, should not be followed in the instant case.

For the reasons above indicated, the decision in this case should be for the petitioner.

SMITH agrees with this dissent.